STATE OF VERMONT v. INTOXICATING LIQUORS, JAMES KELLY AND OTHER CLAIMANTS.

*Motion to Quash. Intoxicating Liquors. Seizure. Complaint and Warrant. Costs. Evidence. Search. Description of Place. Appearance. Assessors.*

All matters not apparent upon the record, upon which a motion to quash is founded, must be alleged in a traversable form by plea, unless it is expressly provided otherwise by statute.

The State's attorney, without the consent or knowledge of the persons who signed the complaint for a seizure of intoxicating liquors, erased in the presence of the justice, who issued the warrant, the word "occupied," and interlined in its stead the word "owned," but afterwards erased the word "owned," and retraced with his pen the word "occupied," intending to restore it. *Held*, that he did not alter the complaint in fact or effect.

Where a complaint for the seizure of intoxicating liquors after the direction to the justice omits the names of the complainants, but states as follows: "Come legal voters in the city of Burlington, and complain," &c., to which the signatures of three persons are affixed, it is substantially in accordance with the requirements of the statute.

Where in the certificate of the oath, the persons are described as those above named, it is a reference to the complainants and to no others, and amply shows that the complainants made oath to their complaint, notwithstanding the initials of the given names were used in one place, and the whole names in another.

If the description of the place to be searched leaves no discretion to the officer, as to what place he will search, but directs him in that respect, it is sufficient.

The claimants appeared, and after they had objected to the return of service, remained before the court and made claim. *Held*, that the proceedings thereafter were well founded upon the voluntary stay of the claimants.

Assessment rolls made by assessors under the laws of the United States, and entries made by collectors under the same laws, showing that R. had taken out a United States licence as a retail liquor dealer, is proper evidence tending to show that he intended to pursue that avocation.

The marking of liquors claimed by C. to him at Plattsburg *via* Burlington, while he lived in Burlington, and kept a grocery there, in connection with the quantity of the liquors, and the fact that they were at Burlington, tended to show that the liquors were got for unlawful purposes.

The fact that R., the claimant, kept the Stanton House in Burlington, which was supplied with conveniences for selling liquor, and that a former seizure had been made at the same house, while it was kept by R., was proper evidence, tending to show that the liquors seized there were kept for an unlawful purpose.

A hotel keeper has no right to furnish his boarders with intoxicating liquors.

The taxation of costs against claimants is proper, either under the general laws or under the act of 1870.

Three cases were heard and tried together, the first being

*State* v. *Six Barrels Intoxicating Liquor ; James Kelly, Claimant.*

THIS was a proceeding under § 22, chapter 94, of the General Statutes relating to the seizure of intoxicating liquors. The claimant filed a written motion to quash the proceedings.

On trial upon said motion, it was conceded by the prosecuting attorney as part of the case, that at the time the original complaint was signed, and at the time the signers made oath to it before the justice who issued the warrant, it contained the word " occupied " and no other, between the words " therewith by him," and the words " and situate," in the sixth line of the complaint ; that after the complaint had been signed and sworn to, and before it was given to the officer for service, the State's attorney, who had charge of the prosecution of the cause, without the consent or knowledge of the persons who signed the complaint, or either of them, and in their absence, erased, in the presence of the justice who issued the warrant, the word " occupied," and interlined in its stead, the word " owned," and that at the same time as soon as this had been done, it occurring to the State's attorney that he had no legal authority to make such alteration, he erased the word " owned," and retraced with his pen the word " occupied," intending to restore it ; and these facts were found by the court.

The names of the complainants were not inserted in the complaint, the blank spaces for that purpose not being filled.

No testimony was offered by either party under the *third* cause assigned in the motion to quash.

Said motion was *pro forma* overruled by the court, to which the claimant excepted.

The prosecutor objected to the present written motion to quash, for the reason that the written motion filed before the justice did not furnish a sufficient basis for this motion.

Motion to quash filed in the county court. Claimant set forth the following causes :

1. The names of the complainants are not inserted or contained in the said complaint.

2. It does not appear by the said complaint that it was made by three legal voters of the city of Burlington.

3. The said Samuel Huntington, A. S. Dewey, and W. H. S. Whitcomb, who signed said petition and made oath thereto, were not, at the time of the making of said complaint, nor were any or either of them, legal voters in said Burlington.

4. The description of the place where it is alleged in said complaint that intoxicating liquor was believed to be kept or deposited, is not sufficient, nor at all certain, but is vague and uncertain.

5. After the said complaint was subscribed by the said Huntington, Dewey, and Whitcomb, and after they had made oath to the same, and without the knowledge or consent of the said Huntington, Dewey, and Whitcomb, or either of them, and in their absence, the said complaint was wittingly and intentionally altered by Daniel Roberts, State's attorney, by wholly erasing and obliterating the word "occupied," after the word "him," in the fifth line of said complaint, and inserting in lieu thereof the word "owned," and was afterwards again altered by the said Roberts without the knowledge or consent of the said Huntington, Dewey, and Whitcomb, or either of them, by wholly striking out and obliterating therefrom the word "owned," so inserted by the said Roberts as aforesaid.

6. It does not appear by the officer's return on said warrant that lawful service was made upon the said Kelly of said warrant.

Claimant's motion to quash, filed with the justice, assigned as a cause:

That said complaint and warrant, and the return thereon are defective, illegal, informal and wholly insufficient in law, and this he is ready to verify.

The cause came on for trial on the merits, at the April term, 1871, Chittenden county, PIERPOINT, Ch. J., presiding, and was tried by jury, who returned a verdict "that the liquors in question were brought into, and kept within, this State, in violation of law, and ought to be condemned." Upon which verdict the court adjudged the liquor in question forfeited, and that the State recover of the claimant its costs, and rendered judgment accordingly. To this ruling and decision the claimant excepted.

*State of Vermont* v. *Intoxicating Liquor, Robert C. Rowe, Claimant.*

The claimant filed a written motion to quash, which motion, by consent of counsel, was *pro forma* overruled. Neither party offered any evidence under it. The case then proceeded to trial by jury.

On trial before the jury, the prosecuting attorney, among other testimony, offered in evidence the rolls or lists kept in the office of the collector of United States internal revenue, for the third congressional district of Vermont, which lists purported to contain the names of persons in said district, who applied and paid for licenses as retailers of intoxicating liquors in the years 1868 and 1869, and contained the name of the claimant Rowe. Said rolls were offered in connection with testimony of A. J. Crane, collector, who testified, in answer to the question, whether in the years 1868 and 1869, the claimant paid a tax in his office as a retail liquor dealer, as follows : " Yes, the records of my office show that he did. I have the records before me. On the 27th day of May, 1868, he paid a tax as retail liquor dealer, of $25. This license ran from May 1, 1868, to May 1, 1869. On the 7th of May, 1869, he paid a tax of $25, as a retail liquor dealer. This would run from May 1, 1869, to May 1, 1870."

To the admission of these rolls so introduced, the claimant objected, but the objection was overruled by the court. The jury returned a verdict " that the liquor in question was brought into and kept within this State in violation of law, and ought to be condemned." And thereupon the court adjudged that the property in question was forfeited and that the State recover its costs.

To which rulings, decisions and judgment the claimant excepted.

### Motion to Quash.

And now comes the above named claimant and moves that the said complaint, warrant and other proceedings in said cause be abated, quashed and dismissed, because, he says, that said complaint, warrant, officer's return and all other proceedings in said cause are irregular, insufficient and invalid.

1. The said Samuel Huntington, Noah Allen and Andrew J. Howard, whose names appear as complainants in the body of said

complaint, and who purport to have made oath to the same, were not legal voters, nor were either of them a legal voter in the city of Burlington at the time said complaint was made.

2.  The said complaint is not signed or subscribed by said complainants as required by law.

3.  It does not appear that said S. Huntington, N. Allen and A. J. Howard, who signed said complaint, or either of them, were legal voters in the city of Burlington at the time said complaint was made, or that they, or either of them, ever presented said complaint to any competent and proper authority to take cognizance thereof, and made oath to the same before any lawfully constituted authority.

4.  Said complaint is not sworn to by the persons purporting to have signed said complaint.

5.  The place at which the intoxicating liquor was believed to be kept and deposited, is not described with sufficient certainty in said complaint and warrant.

6.  The place, the entry, and search of which is commanded by said warrant, is not therein properly or sufficiently described.

7.  It does not appear by the officer's return on said warrant, at what place the property seized was found.

8.  It does not appear from the said return or otherwise that any legal service was ever made of said warrant on the owner or keeper of the property seized, or any legal notice of said proceedings ever given.

9.  The said complaint, warrant and officer's return, are otherwise defective, irregular and wholly insufficient.

*State of Vermont* v. *Packages Intoxicating Liquor, Robert C. Rowe, Carr & Blanchard, and James Caine's Estate, Claimants.*

On the trial the prosecuting attorney introduced as witness Luman A. Drew, the officer who made the seizure, and proposed to show by him that James Caine, of Burlington, Vt., having deceased since the justice trial, and for whose estate a claim was made and appearance entered, stated at the time of the seizure that he claimed the keg of gin mentioned in said officer's return, marked " (G) James Caine, Plattsburgh, N. Y. via Burlington "; also the ten gallon keg of whisky mentioned in said return, marked " (B) James Caine, Plattsburgh, N. Y., via Burlington ;" and that the said James Caine lived on Lake street in said Burlington, and kept a grocery ; that the claimant Matthews, at and

before the time of the seizure, kept a billiard-room in Burling-
ton, and had in connection with it a bar supplied with the custom-
ary appliances for selling liquor; and that at the time of the seizure
Matthews claimed the three packages mentioned in said return and
marked with his name; that the claimant Rowe, at and before the
seizure, kept a tavern called the " Stanton House," in Burlington,
which was supplied with a bar, counter, and stand for cigars and
glasses, with all the conveniences for selling beer and liquors;
and that the witness had on a.former occasion searched the Stan-
ton House premises and found and seized therein, from said bar,
liquors.   To all of which the claimants objected, but the objection
was overruled and the witness testified in accordance with the
offer: to all which claimants excepted.   The said Drew also tes-
tified that he seized all of the liquors in question and described in
his return, in a room in the passenger depot of the Vermont Cen-
tral Railroad company, in Burlington, and to the truth of his
return.   On cross-examination he also testified that said Rowe,
before and at the time of the seizure of the barrel of beer
claimed by him, kept a large number of boarders and also enter-
tained travellers and guests.   The only testimony in the case re-
lating to the liquors claimed by Caine's estate, in any way tending
to show that it was intended for any unlawful use or purpose, was
that given by the witness Drew as above stated.

   The prosecuting attorney also introduced as a witness E. A.
Jewett, a deputy collector of internal revenue in the office of A.
J. Crane, Collector, who testified that he kept most of the books
in said office, and most of the entries were in his hand-writing —
some were not,— that he had no personal recollection of the claim-
ants paying a special tax as retail liquor-dealers or otherwise.

   The prosecuting attorney also introduced as a witness A. J.
Crane, who testified that he was collector of internal revenue for
the third congressional district in 1868 and 1869; that he had in
his office accounts of all who had paid special taxes as retail
liquor-dealers, and that the books showed those who had paid
these taxes; that upon the payment of such tax a receipt is issued
to the person paying the same; that this book (producing it) is
my account of daily receipts; that these lists (producing them)

will show what a man is taxed for, and they will indicate when the tax was paid ; but this book (referring to the book above mentioned) is a record of daily receipts — a daily record.  A man pays a tax and it goes on to this book, and the entries are made either by myself or by my clerk, and is also noted on these lists (referring to lists above mentioned) ; that none of the entries on said lists were in his handwriting ; that the entry as to Matthews was in Jewett's handwriting ; that he had no personal knowledge as to the making of this entry as to Matthews except that said book and list were kept in his office as above stated ; that said lists embraced the names of such persons as make application or are assessed for special taxes as retail liquor-dealers among other taxes ; that said lists were made out by the assistant assessors and by them sent to the assessor, and by him sent to his — the said Crane's — office ; that said lists were kept and assessments paid thereon ; that said lists were in the handwriting of one Noyes, formerly assistant assessor of internal revenue.  The prosecuting attorney then proposed to show by said Crane that said Rowe and Matthews each paid a United States special tax as retail dealers in intoxicating liquors for the year 1869.  To this the claimants objected, but the objection was overruled and the witness thereupon testified that he had no personal recollection of such payment by Rowe, except as it appeared from said lists and book.  The prosecuting attorney then offered said lists and book in evidence in connection with the testimony of said Crane, for the purpose of showing that said claimants Rowe and Matthews paid each a special tax as retail liquor-dealers for the year 1869 : said list including among others the names of the claimants Rowe and Matthews : to the introduction of which claimants objected, but the objection was overruled and said lists and book were put in evidence in connection with said Crane's testimony — to the introduction of which claimant's excepted — and are made a part of the case. Said lists showed that claimant Rowe was assessed as a retail liquor-dealer for the year 1869 ; that a memorandum on said list showed that said Rowe paid said tax, May 7, 1869 ; that said list showed that claimant Matthews was assessed as retail liquor-dealer, and the memorandum thereon showed that said tax was

State v. Intoxicating Liquors and claimants.

paid June 10, 1869. Said Crane also testified, against the objec-
tion of claimant Matthews, that the license for which said Mat-
thews paid said tax ran from May 1, 1869, to May 1, 1870; and
said Crane testified in connection therewith that such taxes were
paid as above and were returned by him as paid, and were depos-
ited to his credit as collector. There was no other evidence in
the case on either side.

The claimants requested the court to direct a verdict that said
liquors were not brought and kept within this State with an un-
lawful intent and purpose, and that the same should be acquitted:
that especially the court should direct such a verdict as to the
liquors claimed by Caine's estate. But the court refused so to do
—to which refusal claimants excepted.

The claimant Rowe among other things requested the court
to instruct the jury that he had the right by law to keep and fur-
nish members of his family with intoxicating liquors, and that
boarders for such purpose were members of his family, and that
such right would extend to them. But the court declined to give
such instructions and omitted to give any instructions upon the
point embraced in said request: to which refusal claimant Rowe
excepted. The prosecuting attorney in presenting the case to the
court and jury said nothing, and made no claim, in regard to the
point made by said request.

The court charged the jury satisfactorily except as above ex-
cepted to. The court upon the verdict of the jury adjudged that
the liquors in question were forfeited and that the State recover
its costs of the claimants, and rendered judgment accordingly: to
all of which rulings, refusals, decisions, and judgments the claim-
ants excepted.

The claimants also filed a motion to quash for substantially the
same reasons stated in the motion in the foregoing case in which
Rowe was claimant, which was *pro forma* overruled: to which
the claimants also excepted.

The places to be searched were described in the different war-
rants, as follows:

I. " The house, cellar, and shop of James Kelly, situated on

Water street in the city of Burlington in said county " (Chittenden).

II. " The premises situated on Church street in the city of Burlington in the county of Chittenden, known as the Stanton House, and the buildings connected therewith which belong thereto, and the cellars covered by the roof of the Stanton House property north of the avenue leading to the Stanton House stables."

III. " The depot of the Vermont Central Railroad in the city of Burlington and county of Chittenden."

*R. H. Start* and *E. R. Hard*, for claimants.

*W. L. Burnap*, State's attorney, and *Daniel Roberts*, for the State.

The opinion of the court was delivered by

WHEELER, J.   So far as the motions to quash in each of these cases are founded upon matters not apparent upon the face of the proceedings and no trial of fact has been had upon them without objection, they are not of any effect to raise any question upon such extraneous matters.   The rule appears to have been established early that all such matters must be alleged in a traversable form by plea unless some statute expressly provided otherwise ; and that rule appears to have been uniformly followed where any question has been made about the method of procedure.   *Barrows* v. *McGowan*, 39 Vt., 328.   These motions to that extent are disposed of upon this ground, but without intending to imply that any of the objections would have been fatal if raised by plea.

All parties seem to have waived this question as to so much of the motion in the case of Kelly, Carr and Blanchard as sets forth an alteration of the complaint by the state's attorney, and evidence appears to have been received without objection, from which the court found the facts upon that subject.   This course brought all questions arising upon the facts so found, before that court, and they were so disposed of there as to be revisable here.   What the state's attorney did in that behalf, however, did not alter the complaint in fact or effect.   He defaced it, but the defacement of it, although done with pen and ink, did not, when done, vary it at all,

but left it as it was before.   See *Bellows* v. *Weeks*, 41 Vt., 590. The decision of the county court upon these facts, as to that part of the motion, appears to have been correct.

So far as the motions were founded upon matters apparent upon the face of the proceedings, they properly and regularly raised all questions arising upon such matters.

The objection that the complainants did not appear to have been legal voters in the city of Burlington, as often as made in either case, was not founded upon fact.*   In Kelly's case, where there is the most color for this objection, the complaint, after the direction to the justice, treating the word " and "— which is in a line by itself and not at all connected with any other words — as surplusage, proceeds to state that " come legal voters in the city of Burlington and complain," etc. : to which the signature of three persons is appended.   This is a plain statement that these persons come and complain as legal voters, and clearly implies that they are such.   This is as much as the statute requires, and is sufficient.

The same is true of the objection urged that the persons sworn to the complaints do not appear to be those who signed the complaints.   The certificate of the oath in each case contains the names of the persons sworn and the names are similar to those signed to the complaints, although in some instances the initials of the given names are used in one place and a part or the whole of those names in the other.   In each certificate the persons are described as those above named, and this reference is to the complainants and to no others and amply shows that the complainants made oath to their complaint.

The description of the places to be searched, in each case, left no discretion to the officer in respect to what places he would search.   The warrants directed him in that respect, and did not leave him to direct himself.   This seems to be sufficient in such cases.

The statute points out no particular mode for summoning claimants.   In these cases the officer returned that he summoned them, without specifying how he did it.   They appeared and objected that the returns did not show sufficient service in that respect.   In cases of this kind the process is returnable forthwith.   If upon

28

return it appeared to have been served improperly or insufficiently, further service could be required by the court and made before proceeding with the prosecution. If no service should be made upon a claimant, he could voluntarily appear and make claim, and if he should do so the proceedings would be as well founded upon his voluntary claim as upon the most perfect service. These claimants, after they had objected to the return of service, remained before the court and made claim, and the proceedings thereafter were well founded upon the voluntary stay of the claimants. There was no occasion for any further service, when the claimants voluntarily staid in court upon that already made. And there is no occasion now to decide whether the service would have been sufficient to bind the claimants in any way if they had left the proceedings to stand upon the strength of the return and had not made any claim.

This disposes of all the questions arising upon the motions and of all questions made in Kelly's case.

In each of the other cases question is made as to the admissibility of assessment rolls made by assessors under the laws of the United States, and of entries made by collectors under the same laws of payments made by the claimants of special taxes as retail dealers in spirituous liquors. No question is made but that the fact of such payment if properly proved would be proper evidence tending to show that the claimants had procured the liquors in question for the purpose of retailing them. And no such question could successfully be made ; for the fact that a person put himself to the expense of a license as a retail dealer in liquors would be quite pertinent to show that he did so for the purpose of that avocation, intending to pursue it. The question is made solely concerning the admissibility of the evidence. The lists appear to have been made by the assessor, whose duty it was to make such assessments. If the laws of the United States did not require him to make such lists, the nature of his duty under the laws did. The same is true of the entries made by the collector. He could not properly perform his duties without keeping such accounts and making such entries as these. They were both public officers and made the entries in the course of their official du-

ties.   The documents appeared to have been made under the personal observation of the officers whose duty it was to make them, and to have come from the proper custody.   In 1 Greenleaf on Evidence, § 483, it is laid down that books kept by persons in public office, in which they are required — whether by statute or by the nature of their office — to write down particular transactions occurring in the course of their public duties and under their personal observation, are generally admissible in evidence.   In the next section, books of assessment of public rates and taxes are enumerated among the proper instruments of this class of evidence.   No cases or text-books are cited that are contrary to this rule, and it seems to be well enough founded.   This evidence was fairly within the rule and was properly admitted.   This disposes of all questions made in Rowe's case.

The marking of the liquors claimed by Caine to him at Plattsburgh *via* Burlington while he lived in Burlington and kept a grocery there, in connection with the quantity of the liquors and the fact that they were at Burlington, tended to show that the liquors were got for unlawful and not for innocent purposes, and was sufficient to be submitted to the jury upon the trial of the claim to the liquors.   The case of *Com.* v. *Madden*, 1 Gray, 486, cited to the effect of the fact that Caine kept a grocery, recognizes that evidence of such fact is admissible in connection with other evidence, and only decides that alone it is not sufficient to warrant a conviction.

The evidence, that one claimant kept the Stanton House, which was supplied with conveniences for selling liquors, was a part of the same offer, and was admissible for the same reasons that the fact of keeping a grocery was.

The testimony concerning a former seizure at that same house was also a part of the same offer, and was proper evidence if the house was kept by the claimant at the time of the seizure.   It was opposed only by a general objection to the whole offer, without any claim that he did not then keep the house.   The admission of the evidence, under these circumstances, does not affirmatively show error, and cannot, by the usual rule as to intendment, be held here to have been error.

Ozier and wife *v.* Hinesburgh.

The claimant, Rowe, requested the court to instruct the jury that he had a right by law to keep and furnish members of his family with intoxicating liquors, and that boarders for such purpose were members of his family, and that such right would extend to them. The court refused this request. The case shows that he was the keeper of the Stanton House, and kept a large number of boarders, and entertained travelers and guests; but does not show that he had any family according to the common meaning, nor that the boarders stood in any relation to him other than that implied from the fact that they boarded at the Stanton House, which he kept. If the request would have been well founded in law upon facts that would warrant the application of the rule it contains, the facts in this case would not warrant such application, and the request was properly refused.

The verdicts were a proper determination of the issues joined upon a traverse of the allegations of the respective claimants, and were a sufficient foundation for a judgment of condemnation of the liquors. The taxation of costs was also proper, either under the general laws as to costs, or under the act of 1870, on that subject, which related to the remedy, and applied to proceedings had in any case after its passage.

Exceptions overruled, and judgment that liquors, and vessels containing them, be forfeited to the use of the city of Burlington, to be delivered to the city agent.