COMMONWEALTH *vs.* CERTAIN INTOXICATING LIQUORS,
John B. Tozier & another, claimant.

Hampshire.    September 14. — October 2, 1874.    WELLS & MORTON, JJ., absent.

In a complaint under the St. of 1869, *c.* 415, § 44, an averment that intoxicating liquors were kept " by a person unknown " for sale in violation of law, is sufficient.

Evidence that liquors were seized in the freight depot of a railroad company, at N. in this Commonwealth; that they were marked T. D., with the name of a place in Vermont, and the words "to be held at N.;" that a person employed in a grocery drove by the officer who made the seizure, in a buggy, and made motions towards the freight depot; that when the officer arrived at the depot the man who drove by in the buggy and one of the employees of the railroad company were engaged in rolling the barrels of liquor out on the back side of the depot, is not sufficient to warrant a finding that the liquor was kept for sale in violation of law, under the St. of 1869, *c.* 415, § 44.

COMPLAINT under the St. of 1869, *c.* 415, § 44, alleging that certain intoxicating liquors seized on a warrant were kept, and deposited in the freight-house of the Connecticut River Railroad Company, by a person unknown, for sale in violation of law.

At the trial in the Superior Court, before *Wilkinson,* J., before the empanelling of the jury, the claimants filed their claim to said liquors; and moved to quash and dismiss the complaint and

warrant, because they did not contain the name of the person by whom said liquors were kept and deposited. The presiding judge overruled this motion and the claimants excepted. The government put in the following evidence :

Elijah N. Sampson testified : "I seized the liquor on September 24. I went then to the Connecticut River Railroad freight depot in Northampton. As I was going down Strong Avenue, Patrick Garvey drove by me with a horse and buggy, making motions towards the depot as he went down. Barton was about half way betwixt me and the freight-house ; I motioned to him to go down as quick as he could. When I got down to the freight-house I found these two barrels of gin there, and Garvey standing near it and Barton. The two barrels of gin were marked ' T. D., South Vernon, Vermont, to be held at Northampton.' Gauge mark on the barrels. I seized it and brought it away. Garvey was at work for his brother at that time in a grocery store on Main Street. The liquors were in the freight-house of the Connecticut River Railroad. It was in among other freight."

A. R. Barton testified : "I was between Clark's livery stable and the freight-house, Sampson was up towards Main Street ; this young Garvey came down with a team making motions back, as I supposed, that Sampson was coming. As soon as he passed me, I ran along and got in immediately after he did. One of the men employed on the railroad had one of these barrels, and Garvey had the other, rolling them out on the back side of the depot. I stopped them, told them that it said ' to be held at Northampton,' and I guessed we would hold them. Sampson came in and seized the liquors."

The claimants offered no evidence, but asked the court to rule that the charges in the complaint and warrant were not sustained upon the evidence. The court declined so to rule, but submitted the case to the jury under proper instructions. The jury found that the liquors were kept as charged in said complaint and warrant, and the claimants alleged exceptions.

*D. W. Bond*, for the claimants.

*C. R. Train*, Attorney General, for the Commonwealth.

AMES, J. The motion to quash for the reason that the complaint does not give the name of the person by whom the liquors were kept and intended for sale, cannot prevail. The prosecutor

is bound to give as good a description as he can, but his ignorance of the name does not defeat the process. In such a case, the averment that the name is unknown is sufficient. *Commonwealth* v. *Sherman*, 13 Allen, 248.

In this case, the barrels containing the liquors were found at a railroad station with other freight, and were rolled out of the building, apparently in order to be taken to some other place. The only ground for suspicion as to the disposition intended to be made of them arises from the nature of the merchandise, and the fact that the mark " T. D., South Vernon, Vermont," was accompanied with the words " to be held at Northampton." The motions which Garvey is said to have made are not so described as to furnish any intelligible indication of a purpose on his part. He was not in the act of putting the barrels into a wagon, nor was he at the depot with a carriage in which he could have taken them away. It does not appear for whom they were meant, or where they were to be carried from the depot. The evidence reported does not show that any person was privately trying to get possession of them, or that any concealment was practised in relation to them. All that is shown is that they had arrived at the station and were left there to be called for. The intent to sell necessary to be shown is a present intent to sell when opportunity should arise. Whether they had been ordered by some dealer who had made up his mind, on second thoughts, that the business was too unsafe to go on with; whether they were left there to be disposed of in some lawful way, or to be sent to Vermont, or elsewhere; is left to conjecture. They were not for sale while at the depot, and the evidence that anybody was intending, at the date of the complaint, to sell them unlawfully, falls far short of the precision and distinctness required by the safe and discreet administration of criminal law.

*Exceptions sustained.*