# NEWPORT COUNTY.

## IN RE THE LIQUORS OF MORRIS S. HORGAN.

C. by his last will gave his estate to his wife for life, directing that, if the income of the personalty should prove insufficient, the personalty should be sold to supply her necessities, and that after the exhaustion of the personalty the realty should be sold for the same purposes; remainder after the death of the wife to the testator's children equally.  The realty was valued at $10,000, was situated in the city of Newport, and qualified no one to vote except W., one of the testator's eight children.  No part of the realty had been sold, and it did not appear that the personalty was insufficient for the widow's needs.

*Held*, that W. was a duly qualified voter under Article 2, § 1, of the Constitution of Rhode Island, of A. D. 1842, by virtue of his ownership of an estate in remainder under the will of C.

The words in Article 2, § 1, of the Constitution of A. D. 1842, "of the value of $134," when applied to an estate in remainder, mean the value of the estate for life, and in remainder taken as a whole. That the remainder might be cut off by an exercise of the power of sale does not prevent the remainder from qualifying W. as a voter in the absence of proof that the personalty is insufficient for the widow's needs.

The direction in the Constitution of Rhode Island, Article 1, § 6, that no search warrant "shall.issue but on complaint in writing, upon probable cause supported by oath or affirmation, and describing as nearly as may be the place to be searched and the persons or things to be seized," requires the complaint to be in writing, and the warrant to contain a description reasonably definite of the things to be searched for and seized. It does not require the complaint to contain such a description.

Pub. Laws R. I. cap. 596, § 27, giving a form of information for the seizure of intoxicating liquors, is not violative of the Constitution of Rhode Island because indefinite in description.

*The Liquors of Fitzpatrick, ante*, p. 60, affirmed and followed.

Intoxicating liquors when seized were taken from the possession of one H.

*Held*, that proof of the statements of H., as to the ownership of the liquors, was properly allowed in the proceedings for condemnation.

EXCEPTIONS to the Court of Common Pleas.

*Providence, July* 6, 1889. TILLINGHAST, J. This is a proceeding under Pub. Laws R. I. cap. 596, of May 27, 1886, §§ 19–27, for the seizure and forfeiture of certain intoxicating liquors, alleged to have been illegally kept for sale by one Morris S. Horgan. The complaint upon which the search warrant was issued was in the following form :

"To Darius Baker, Esq., Justice of the District Court of the First Judicial District, in the County of Newport, in the State of Rhode Island and Providence Plantations.

"William C. Congdon, Chief of Police, and a legal voter of the City of Newport, in said county, on oath complains, in the name and behalf of the State, that certain intoxicating liquors — to wit : A certain quantity of rum, being about and not exceeding one hundred gallons; a certain quantity of whiskey, being about and not exceeding one hundred gallons; a certain quantity of gin, being about and not exceeding one hundred gallons; a certain quantity of brandy, being about and not exceeding one hundred gallons; a certain quantity of ale, being about and not exceeding one hundred gallons ; a certain quantity of wine, being about and not exceeding one hundred gallons; a certain quantity of strong

beer, being about and not exceeding one hundred gallons ; a certain quantity of lager beer, being about and not exceeding one hundred gallons ; a certain quantity of other strong and malt and intoxicating liquors, being about and not exceeding one hundred gallons ; a certain quantity of mixed liquors, a part of which is ale, wine, rum, and other strong and malt and intoxicating liquors, being about and not exceeding one hundred gallons, contained in certain barrels, kegs, jugs, jars, bottles, decanters, and other vessels — were and still are kept and deposited by one Morris S. Horgan, of the City of Newport, in a certain building numbered five hundred and sixteen and five hundred and eighteen, then and there situate on Thames Street, so called, in the City of Newport, and in the outbuildings in the rear of said building, and used in connection therewith, against the statute and peace and dignity of the State.

" Wherefore the complainant prays for a warrant to search said buildings and outbuildings for said liquors and vessels, and that the same may be declared forfeited to the State.

" Dated at Newport this fourteenth day of July, A. D. 1888.

" WILLIAM C. CONGDON,

" <i>Chief of Police and a legal voter of the City of Newport.</i>"

" NEWPORT, SC. — In Newport, this fourteenth day of July, A. D. 1888, personally came William C. Congdon, Chief of Police, and a legal voter of the City of Newport, subscriber to the above complaint, and made oath to the truth of the same.

" Before me,            DARIUS BAKER,

" <i>Justice of the District Court of the First Judicial District.</i>"

Upon this complaint a warrant in due form was issued to search the premises described, and to seize the liquors and vessels mentioned, and hold the same until further order. This warrant was duly served, as appears by the officer's return thereon, and quite a large quantity of intoxicating liquors of the various kinds mentioned in said complaint, together with the vessels containing the same, was seized and taken possession of by said officer.

On the trial of the complaint for forfeiture in the District Court the following motion to quash was made by said Morris S. Horgan, viz. :

" NEWPORT, SC.                    DISTRICT COURT,
                                 FIRST JUDICIAL DISTRICT.

" And now comes the said Morris S. Horgan, who, while not
admitting that he is now, or at any time has been, the owner or
keeper of the intoxicating liquors described in the affidavit herein,
warrant of seizure, or return thereon, but requiring the State to
prove the same as it may be advised, moves that the said warrant
be quashed for this : That the said complaint was not sworn to
by a legal voter as required by section 19, chapter 596, of the
Public Laws of Rhode Island ; and that the said William C. Cong-
don, who made said affidavit, was not at the time of making the
same really and truly possessed in his own right of real estate in
any city or town of said State of the value of one hundred and
thirty four dollars over and above all incumbrances, or which rents
for seven dollars per annum over and above any rent reserved, or
the interest on any incumbrance thereon, being an estate in fee
simple, fee tail, for the life of any person, or an estate in reversion
or remainder, which qualifies no other person to vote.

" That the name of William C. Congdon was not registered in
the town where he resides, on or before the last day of December,
A. D. 1887 ; that he has not paid a tax or taxes assessed against
him within a year next preceding the time of making said affi-
davit, in any city or town in this State, to the amount of one dol-
lar; that he has not been enrolled in a military company in this
State, been equipped and done duty therein according to law for
one day during such year.

                " By his Attorney,        FRANK F. NOLAN."

This motion was overruled by said District Court, and such pro-
ceedings were had therein that said liquors, and the vessels con-
taining the same, were declared forfeited to the State and ordered
to be destroyed.    From this judgment said Morris S. Horgan took
an appeal to the November Term, 1888, of the Court of Common
Pleas for said county.    In the Court of Common Pleas the said
Morris S. Horgan filed another motion to quash, which is as fol-
lows, viz. :

" NEWPORT, SC.                           COURT OF COMMON PLEAS,
                                              NOVEMBER TERM, A. D. 1888.

" And now comes the said Morris S. Horgan, who, while not admitting that he is now, or at any time has been, the owner or keeper of intoxicating liquors as described in the affidavit herein, warrant of seizure, or return thereon, but requiring the State to prove the same as it may be advised, moves that the said warrant be quashed for this : That the said complaint on which said warrant of seizure was issued does not comply with section 20, chapter 596, of the Public Laws of Rhode Island, which require the affiant to describe as nearly as may be the place to be searched, and the liquors and the vessels containing the same to be seized ; and also for that the description of said liquors and vessels as given is insufficient and inadequate in law to base a warrant of seizure thereon.

              " By his Attorney,                FRANK F. NOLAN."

This motion to quash, together with the motion made in the District Court for the same purpose and renewed in the Court of Common Pleas, was overruled and exceptions duly taken thereto.

The following agreed statement of facts, as to the qualification of said William C. Congdon as a legal voter, was introduced in evidence and made part of the record in the trial of said case, to wit :

" NEWPORT, SC.                           COURT OF COMMON PLEAS,
                                              NOVEMBER TERM, 1888.

     The State    ⎞
        vs.       ⎬
Certain Liquors.  ⎠

     MORRIS HORGAN, *Appellant.*

" It is agreed that William C. Congdon, at the time he made the affidavit on which the warrant of seizure in this case was issued, was a legal voter in a town or city of this State only in case he was qualified by reason of ownership of an interest in the real estate mentioned in the will of William P. Congdon, deceased, a copy of which is hereto annexed.

" That at said time said William C. Congdon was upon the voting lists of the city of Newport by virtue only of said ownership.

" That at said time there were living eight children of the said William P. Congdon, deceased ; that the said real estate qualified no person to vote at said time, unless it qualified said William C. Congdon ; that it was then unsold and formed a portion of said William P. Congdon's estate ; that said real estate was situate in the city of Newport, and was of the value of ten thousand dollars. " SAMUEL R. HONEY,

*Attorney for claimant of liquors.*

" ROBERT W. BURBANK,

*Assistant Attorney General.*"

That part of the will of William P. Congdon, deceased, which is pertinent to the question raised by the agreed statement of facts, is as follows :

" 2. I give, devise, and bequeath to my wife, Nancy T. Congdon, the use, occupation, rents, profits, and income of all the rest, residue, and remainder of my estate, real, personal, and mixed, of whatever name, nature, and description, and wheresoever found, of which at the time of my decease I may be seized, possessed, and entitled to. To have and to hold the same for and during the term of her natural life, subject, however, to the bequest made to my two daughter, Charlotte and Martha, mentioned in the fourth section of this will.

" 3. And my will further is that in case the rent, profits, and income of my personal estate shall not be sufficient for the comfortable support and maintenance of my said wife, then I direct that, under the advice and direction of the Court of Probate of the City of Newport, the principal, and the whole of it if necessary, of my said personal estate, as her necessities may require, be used and expended for that purpose. And in case the whole of my said personal should be so used and expended, then I direct that, under the advice and direction of said Court of Probate, my real estate should be sold, or such a part thereof as may be necessary, and the proceeds thereof be applied to her support and maintenance. And in case it should be for the best interests of all concerned that the real estate should first be sold, then I hereby order and direct that the same shall be so done. The said Court of Probate to determine the advantages and interests of such priority of sale.

"4. I give and bequeath unto my two said daughters, Charlotte and Martha, a home each in my homestead situate in Newport on Broad Street, for such a time and so long as each shall remain single and unmarried. This bequest is, however, subject to the contingency of the sale of said homestead, as mentioned in the preceding section of this will, and is limited thereby.

" 5. From and after the death of my said wife, I give, devise, and bequeath all said rest, residue, and remainder of my estate, or such part thereof as may not have been expended for her support and maintenance, to all my children, in equal shares, their several and respective heirs and assigns forever."

We assume, although it no where expressly appears in the record, that William C. Congdon, the complainant, is one of the children of William P. Congdon, deceased.

At the trial of said case in the Court of Common Pleas, after said motions to quash were overruled, the court, upon hearing and the evidence adduced, adjudged the said liquors and the vessels containing the same to be forfeited to the State, and directed a warrant to issue for their destruction. From all which rulings and judgment the said Morris S. Horgan, and the said Samuel R. Honey, Esq., who appeared as counsel for a claimant, the name of which said claimant was not disclosed by said Honey, duly excepted and now bring the case to this court, alleging that said rulings and judgment were erroneous in law and ought to be reversed.

The counsel for the claimants contend, first, that the complainant, William C. Congdon, was not a " legal voter," i. e. not a person who had a right to be upon the voting list of Newport under the constitution and laws of the State at the time of the making of said complaint, and hence that the proceeding ought to be quashed.

This contention is based upon the agreed statement of facts above set out, which shows that the complainant was a legal voter, if at all, by reason of his interest in remainder in the real estate of his late father, which estate as a whole was of the value of ten thousand dollars and qualified no other person to vote. No person can be a legal voter under section 1, of art. 2, of the constitution, unless he " is really and truly possessed in his own right

of real estate in such town or city, of the value of one hundred and thirty four dollars over and above all incumbrances, or which shall rent for seven dollars per annum over and above any rent reserved, or the interest of any incumbrances thereon, being an estate in fee simple, fee tail, for the life of any person, or an estate in reversion or remainder, which qualifies no other person to vote."

Does the interest of William C. Congdon in the real estate of his late father, under the provisions of the will above set forth, furnish the necessary property qualification to enable him to vote? The language of the constitution above quoted is not extremely felicitous, but it is clearly apparent therefrom that several kinds of ownership in real estate are intended to be enumerated, and that either kind is sufficient to qualify the possessor, that is, the person seized thereof, to become a voter. The estate relied upon must be either, 1, an estate of the value of one hundred and thirty four dollars over and above all incumbrances, or, 2, an estate which shall rent for seven dollars per annum over and above any rent reserved, or the interest of any incumbrance thereon, or, 3, an estate in fee simple, or, 4, an estate in fee tail, or, 5, an estate for the life of any person, or, 6, an estate in reversion, or, 7, an estate in remainder." The phrase " being an estate in fee simple," etc., evidently means *having* an estate of this class. So that if a person *has* an estate in remainder of the value mentioned in said article " in his own right," that is, which he holds " beneficially for himself and not simply as trustee or custodian," *In re the Voting Laws*, 12 R. I. 586, 590, 591, this provision of the constitution is satisfied.

The claimants also contend that, although the complainant has an interest in remainder in said estate, there is nothing in the record to show that his said interest is of the value of one hundred and thirty four dollars. And further that, as his interest therein is liable at any time to be divested by the exercise of the discretionary power of sale given by said will, it cannot be said to have that sort of " *value* " which is meant by the use of that term in the constitution.

The proof before us is, that the estate as a whole is of the value of ten thousand dollars, that it belongs to eight children equally,

subject to the rights of the widow of the testator, and that it qualifies no other person to vote. It also appears that the discretionary power aforesaid to sell has not been exercised, but that the real estate remains intact, as it was at the death of the testator.

As to the first point, we are inclined to think that the term " value " as used in the section of the constitution aforesaid, when it applies to an estate in remainder, does not mean the value of the interest of the person sought to be qualified to vote, after deducting the value of the life estate, but the value of the estate for life and in remainder taken as a whole.

This construction, we think, is much more in accord with the evident spirit and purpose of the section than the narrower one contended for by the claimants. And furthermore we understand that this is the practical construction which has been put upon it by the great majority of the Boards of Canvassers in the State ever since the constitution was adopted. It is also in harmony with the liberal spirit of construction generally adopted by the courts in favor of the right to vote which has always, and we think very properly, prevailed in this State.

But secondly, the contention is, that, owing to the power to sell given by the will, the tenure of the estate in remainder is so precarious that it can have no market value, and therefore, supposing that the remainder is required to be worth $134, cannot qualify a remainderman to vote. We do not see that this is so; since, for anything that appears, the income of the personal estate is ample for the widow's comfortable support, and if so, the real estate is safe from the exercise of the power. We think the burden of proof is on the claimants to show that this is not so.

The second general point made by the claimants is, that section 19 of said chapter 596 is in conflict with section 6, article 1, of the constitution, in that it does not require the *complaint* to describe " as nearly as may be the place to be searched and the persons or things to be seized."

But does the constitution contain such a requirement?

The section thereof referred to is as follows: " The right of the people to be secure in their persons, papers, and possessions, against unreasonable searches and seizures, shall not be violated;

and no warrants shall issue but on complaint in writing, upon probable cause, supported by oath or affirmation, and describing as nearly as may be the place to be searched, and the persons or things to be seized."

The requirement as to the *complaint* in this provision, we think, is that it shall be in writing, that it shall be based upon probable cause, and that it shall be supported by oath or affirmation ; while the requirement as to the *warrant* is, that it shall describe as nearly as may be the place to be searched, and the persons or things to be seized.

This construction seems to be in harmony with the legislative construction which it has practically received ever since the adoption of the constitution ; for upon examination of the various acts passed which provide for the making of complaints to obtain, and the issuing of search warrants, we do not find that it has been customary to provide that the *complaint* should describe " as nearly as may be the place to be searched and the persons or things to be seized," while on the other hand it has been customary to require that the *search warrant* shall do so.    The section next succeeding the one objected to by the claimants as unconstitutional contains this specific requirement.

The Constitution of the United States and the Bill of Rights of nearly every state in the Union contains a provision almost identical with the one before us, with the simple exception that in no other do we find the words " on complaint in writing ; " and the decisions are numerous under these provisions, to the effect that the *warrant* must contain the description mentioned.    See, by way of illustration, *Commonwealth* v. *Dana*, 2 Metc. 329, 336 ; *Sandford* v. *Nichols et als.* 13 Mass. 286 ; *Allen* v. *Staples*, 6 Gray, 491 ; *State* v. *Miller*, 48 Me. 576 ; *Reed* v. *Rice*, 2 J. J. Mar. 44 ; *Bell* v. *Clapp*, 10 Johns. Rep. 263 ; *Grumon* v. *Raymond*, 1 Conn. 40 ; *The People* v. *Holcomb*, 3 Parker Crim. Cas. 656–666 ; *Santo* v. *The State of Iowa*, 2 Iowa, 165 ; *Meek* v. *Pierce*, 19 Wisc. 300 ; 1 Bishop on Crim. Proced. 242–245.

We do not think that the difference in phraseology above referred to changes the meaning so as to require the " complaint in writing " to contain the particular description subsequently mentioned, but that the construction should be the same as if that

phrase were eliminated. We therefore decide that the constitutional requirement as to the description to be given of the place to be searched, and the persons or things to be seized, relates to the warrant, and not to the complaint. The section of the statute objected to, therefore, is not in conflict with this provision of the constitution.

But the claimants contend still further that, even if the court shall find that the section objected to is constitutional, the description given in the warrant (the complaint containing the description is on the same paper, and incorporated in the warrant by reference, *State* v. *Goyette*, 11 R. I. 592 ; *Commonwealth* v. *Dana*, *supra*) is not sufficiently definite to comply with the constitutional requirement. In *State* v. *Snow*, 3 R. I. 64, this court held that the following provision of section 14 of " An act for the more effectual suppression of drinking houses and tippling shops," passed January, 1853, viz., " Nor shall it be necessary to particularly describe the package or kinds of liquors searched for," was not in conflict with the article above referred to. The reasoning of the court in that case was, that the provision of the statute objected to did not " authorize a warrant to issue without describing the place to be searched and the things to be seized as nearly as may be." The provision in section 9 of that act, said the court, is, " that the same requisites shall be observed before issuing a search warrant under this act as are required before the issuing a search warrant in other cases. Those requisites are such as are required by the constitution.

" The constitutional provision supposes that it would not be possible particularly to describe in all cases, and therefore it contents itself with providing for a description as near as may be, *i. e.* as near as the circumstances will admit, according to the nature of the property or thing.

" We do not think the act in this respect is necessarily or clearly in conflict with the constitutional provision. It is still requisite that the description should be as nearly as may be, and yet not necessarily particular and precise, but varying according to the nature of the thing to be described."

In that case the description of the things to be seized was in the following language, viz. : " A quantity of rum contained in two bar-

rels, marked C, and in two jugs and two demijohns; also a quantity of brandy, contained in two barrels, marked C, and in two jugs and two demijohns; also a quantity of gin contained in two jugs and two demijohns, and in two barrels marked C." The officer's return showed that, upon the search warrant which issued upon this complaint, he seized "one barrel, containing a small quantity of rum, marked C, one demijohn containing gin, and one demijohn containing brandy." We think the description in the case before us is fully as specific as the one cited, which was held by the court to be sufficient. In a proceeding of this sort it would be manifestly impossible to set forth with anything like mathematical accuracy the character or quantity of the articles to be seized. They are kept for sale, if at all, clandestinely and in violation of law, and the only description which it would be possible to give in most cases must be a somewhat general one. Furthermore, the description is in accordance with the form prescribed in section 27 of the same chapter, and is precisely similar to that which was considered and held sufficient by this court in the case of *The Liquors of Fitzpatrick*, *ante*, p. 60. We see no occasion to modify that decision.

As to what has been held to be a sufficient description under similar constitutional provisions in other states, see *State* v. *Robinson*, 33 Me. 564; *State* v. *Bartlett*, 47 Me. 388; *State* v. *Intoxicating Liquor and Claimants*, 44 Vt. 208; *State* v. *Liquor, Drew, claimant*, 38 Vt. 378; *Commonwealth* v. *Intoxicating Liquors*, 116 Mass. 21; *Commonwealth* v. *Intoxicating Liquors, Putnam, claimant*, 97 Mass. 63; *Commonwealth* v. *Intoxicating Liquors*, 110 Mass. 416.

The next and final point made by the claimants is, that the court below erred in admitting in evidence, on the trial of the complaint against the liquors and the vessels containing the same, the declarations of Horgan, the person in whose possession they were found. The reason urged in support of the objection is, that, for aught that appears, the liquors may be the property of other persons than the one in whose possession they were found, and hence that the property of a stranger to the proceedings might be forfeited and destroyed without notice to him.

Several witnesses were allowed to testify, under objection, as to

what the claimant Horgan had said as to the ownership of the property seized. There was proof that it was found in his possession; that he claimed a part of it as his property, and that it was kept for sale by him in violation of law. Furthermore, he was made a party to the proceedings by being summoned in as provided by section 24 of said chapter 596, and duly appeared and was heard by counsel as a claimant of said property.

We think the testimony was rightly admitted. The statement was by a party in possession, and was explanatory of his possession. We are inclined to think it would have been admissible if Horgan was not a party claimant. See *Dodge* v. *Goodell*, *ante*, p. 48, and cases there cited. But however that may be, Horgan is a party claimant, and the only one who is known to us. Of course, therefore, his own statements were admissible. It is true, Mr. Honey professes to appear for some person, but does not give his name. For anything that appears, that person may be Horgan. Until he identifies himself, by at least giving his name, we can neither recognize nor regard him.

*Exceptions overruled.*

*Robert W. Burbank*, Assistant Attorney General, for the State.
*Samuel R. Honey & Frank F. Nolan*, for claimants.